IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DELORES LONG,                          )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        1:15CV683
                                       )
FORSYTH COUNTY DEPARTMENT OF           )
SOCIAL SERVICES; DEBRA                 )
DONAHUE,                               )
                                       )
                Defendants.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Delores Long alleges age discrimination in employment under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., as well as related State law claims against her former employer, Defendant Forsyth County Department of Social Security ("DSS"). Before the court is Defendants' motion for summary judgment (Doc. 21), which has been fully briefed and is ready for decision. For the reasons set forth below, the motion will be granted as to Long's federal claims, which will be dismissed, and the action will be remanded to State court for resolution of the remaining State law claims.

## I.    BACKGROUND

Viewed in the light most favorable to Long, the operative facts are as follows:

In 2011, 41-year-old Long was engaged as a part-time employee

of Vanguard, Inc., a private social-services company, when she applied for employment as a full-time social worker with DSS, for whom she indirectly worked as a Vanguard employee. At Vanguard, Long was being paid $25 per hour, her hours fluctuated from four to twenty per week, and she received no benefits. (Doc. 22-1 at 35-36.)[1] Long supplemented her income with unemployment benefits. (Id.)

While Long's application with DSS was pending, a supervisory social worker position became available and, at DSS's encouragement, Long applied for it. (Doc. 22-1 at 3-4.) Among those with whom Long interviewed were Tanya McDougal, director of the Child Protective Services Division, and Linda Alexander, Program Manager and supervisor of the position to be filled. McDougal was over 40, and Alexander was over 50. (Id. at 89-90.)

On September 5, 2011, Jaime Joyner, Forsyth County's Senior Human Resources Consultant, telephoned Long and offered her the position of Senior Social Worker Supervisor at a rate of $22.15 per hour, or $46,072 per year. (Doc. 22-1 at 105.) The "hiring range" for the position was $46,072 to $54,724, and DSS's "market reference point" (which new hires rarely received (Doc. 22-4 at 2, ¶ 3)) for the position was $57,602. (Id. at 10.)

---

[1] All citations are to the docket page, irrespective of the pagination of the underlying document.

Long expressed dissatisfaction with the starting salary and said she would decline the position because of it. Joyner told her that she could not reject the offer until she received DSS's formal written offer letter, so Long agreed to wait for the letter. In the meantime, Long drafted a letter to advocate for a higher starting salary, but she held onto the letter for almost three weeks before sending it. (Doc. 22-1 at 10-14.)

In the meantime, on September 16, 2011, McDougal telephoned Long to express her pleasure that Long would be joining DSS, but Long responded that she was unhappy with the starting salary. McDougal allegedly responded that DSS had a practice of "low-balling" starting salaries and told Long, "Oh, girl, don't worry about it. We'll take care of that on Monday when you show up." (Id. at 15-17.)

The next day, September 17, Long received her offer letter with the $22.15-an-hour starting salary and nevertheless reported for work on September 19 because, Long claims, McDougal had said the salary issue would be "taken care of." (Id. at 18-19, 21-22.) Long signed paperwork associated with her employment acknowledging her starting salary but had several discussions with various DSS personnel to lobby for an increase in pay. While Long received pay increases during her time at DSS, they were all based on the rate at which she was hired. (Id. at 52-53.)

In October of 2012, while Long worked for DSS, she filed a

formal grievance (Doc. 22-3 at 5-10) regarding her salary and various other issues of "disparate treatment and age discrimination within her work unit" (Doc. 4 at 3, ¶ 14), including complaints about her scheduling and the lack of control she was given over her subordinates (Doc. 22-1 at 128-32).  In January of 2013, DSS Director Joe Raymond responded to Long's grievance, denying her relief.  (Id.)

In the summer of 2013, Long's lawyer wrote to Raymond, demanding a salary increase.  (Doc. 22-3 at 36-37.)  Raymond responded that DSS would not adjust her salary.  (Id. at 39.)  On November 10, 2013, Long filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC").  (Id. at 40-42).

The EEOC issued a right-to-sue letter on March 31, 2015.  (Id. at 43.)  Long voluntarily resigned from her position in June of 2015.  (Id. at 3, ¶ 8.)  She commenced this action in State court on July 21, 2015.  (Doc. 4.)

Long alleges that DSS discriminated against her by "low-balling" her starting salary on the basis of age and because she was underemployed at Vanguard.  (Doc. 22-1 at 91.)  She also alleges that DSS subjected her to "numerous adverse employment actions (including, without limitation, assignment of disadvantageous shifts and removal from supervisory responsibility)," based on age.  (Doc. 4 at 2, ¶ 21.)  The complaint purports to incorporate the conduct she set forth in her

formal grievance and EEOC charge.  (Id. at 4, ¶¶ 21(a), (b).)[2]

She further alleges State law claims of breach of contract,

---

[2] In her formal grievance, Long alleged twenty illustrative incidents she said contributed to a hostile work environment. They include charges such as "being hired under false pretenses" because the work did not match the job description; failure of an adequate transition; too many staff to supervise; objections as to an office policy requiring her to submit paperwork when she was late; "having to justify" her job when she expressed she was "'lost' with respect to internal processes"; being reminded of her probationary status; being supervised by another supervisor when her supervisor was on vacation; being required to personally train her staff; failure of adequate training as to internal policies; and being switched to the day unit "in a manner that created hostility between [her] and the current AHU [After Hours Unit] supervisor."  (Doc. 22-3 at 6-7.)

Long's grievance also itemizes instances of alleged age discrimination that she argues can be construed to constitute adverse employment actions.  She expounded on these in her deposition.  The principal ones are as follows:

Long cites an October 11, 2012 DSS announcement for a "new AHU Social Worker position" that she contends is comparable to her position (although it is a different position) but had lesser expectations.  (Id. at 8.)  In the same paragraph, Long variously complains about her salary, her schedule, and the "manner in which [she was] hired."  (Id.)

Long complains at length about her work schedule while she supervised the AHU.  (Doc. 22-1 at 53-54.)  In this position, Long had to work a nighttime shift and occasionally be available for meetings and court appearances during the day.  (Doc. 22-2 at 2-12.)  She claims that the current AHU supervisor is treated better than she was because, among other things, the new supervisor does not have to work late hours "because she has small children," has received a more favorable work schedule, and "is given authority to enforce policy and procedure; make her own rules; and come and go as she pleases."  (Doc. 22-3 at 8.)

Long claims she was told she could take on more responsibility than her younger coworkers "because of [her] maturity and experience."  (Id. at 8.)

Long claims that two newly hired supervisors, Melissa Bell and Teressa Brown, were allowed to build their own teams "slowly," whereas Long "walked into a team" that was already assembled.  (Doc. 22-1 at 69.)

Long claims that she was made to complete another supervisor's work. (Id. at 54-55.)

fraudulent misrepresentation, and negligent misrepresentation in connection with her starting salary. Nowhere does Long claim that McDougal or anyone else directly expressed age-based animus toward her, except to allege that DSS expected more from her due to her "maturity" and "experience." (Doc. 22-1 at 89.)[3]

DSS timely removed the action (Doc. 1) and now moves for summary judgment on all of Long's claims (Doc. 21). The motions are fully briefed and ready for resolution.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment will be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the

---

Long claims that Theresa Boucher, a DSS employee, yelled at her and cursed at her in the course of handling a case of potential child abuse. Long further claims that Boucher complained to DSS's director about the incident. (Id. at 57-64.)

Long complains at great length about her direct supervisor, Linda Alexander. Among other things, Long claims Alexander gossiped about her and exerted more direct control over Long than she thought necessary. (See generally id. at 55-88.)

It is unnecessary to decide which, if any, of these occasions constitutes an adverse employment action because, as addressed infra, all are time-barred for having taken place outside the 180-day period before Long filed her charge with the EEOC.

[3] Long cites 42 U.S.C. § 1981 in her complaint (Doc. 4 at 4, ¶ 24), which protects against race-based discrimination in contracts. See generally CBOCS W., Inc. v. Humphries, 553 U.S. 442, 450-51 (2008). Nowhere does Long claim she was discriminated against on the basis of race.

nonmoving party." <u>Libertarian Party of Va. v. Judd</u>, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court views "the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." <u>Id.</u> at 312. The court cannot weigh evidence or determine credibility at this stage. <u>Foster v. Univ. of Md. - E. Shore</u>, 787 F.3d 243, 248 (4th Cir. 2015) (citing <u>Mercantile Peninsula Bank v. French</u>, 499 F.3d 345, 352 (4th Cir. 2007)). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." <u>Id.</u> (citing <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (per curiam)) (alteration in original).

### B. ADEA Claims

Long alleges various claims of disparate treatment on the basis of age in violation of the ADEA. Defendants contend that all but two of her claims are barred by the ADEA's statute of limitations and that her only timely claims – for pay discrimination and constructive discharge – present no genuine dispute of material fact and are insufficient as a matter of law. Long contends that her claims are timely and that issues of fact preclude summary judgment.

The ADEA authorizes recovery under theories of disparate

treatment, <u>see</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S.

133, 135 (2000), and adverse impact, <u>see</u> <u>Smith v. City of Jackson</u>,

544 U.S. 228, 241 (2005).  It appears that Long intends to assert

the former.[4]  Within the disparate treatment framework, however,

Long fails to advance a coherent, organized basis for relief.  In

fact, her arguments are largely devoted to the State law causes of

action she has alleged.

In the absence of direct evidence of age discrimination,[5] a

---

[4] The only mentions of either term come in Long's brief in opposition to summary judgment, in which she cursorily claims that she suffered "disparate treatment" (Doc. 23 at 6), and in her complaint, in which she claims that she "raised issues of disparate treatment and age discrimination" in a grievance letter (Doc. 4 at 3, ¶ 14).

[5] In defending her State age discrimination claim, Long claims that she was told that due to her "maturity" and "experience," her supervisors "expected that [she] could do more than the others."  (Doc. 22-1 at 89; <u>see also</u> <u>id.</u> at 112 (claiming she was told that "because of my maturity and experience I could take on more responsibility in comparison to the other CPS Supervisors (both under age 40) hired around the same time as my employment").)  Long argues that "maturity" and "experience" are "trigger words" meant to hide age-based animus.  (Doc. 23 at 6.)  She cites <u>Hodgson v. Approved Pers. Serv., Inc.</u>, 529 F.2d 760, 765 (4th Cir. 1975), for the proposition that the effect of trigger words depends on the context in which they are used and further argues that context here is a question of fact for the jury.  However, even assuming without deciding that such terms constitute "trigger words," nowhere does Long offer any context for them to suggest that their use intimates age discrimination.  In fact, the only context she implies – DSS's suggestion that she could do <u>more</u> than others because of her maturity and experience - suggests a non-discriminatory use.  <u>See, e.g.</u>, <u>Stinson v. Burns & McDonnell Eng'g Co., Inc.</u>, No. 85-1419-CV-W-5-AF, 1988 WL 53375, at *2 n.2 (W.D. Mo. Mar. 23, 1988) (granting summary judgment on ADEA claim and finding the statement in plaintiff's termination that his "maturity and experience would be missed" used in a complimentary fashion offered "no support" for plaintiff); <u>Arroyo-Audifred v. Verizon Wireless, Inc.</u>, 527 F.3d 215, 220 (1st Cir. 2008) (affirming summary judgment for employer where its explanation was that plaintiff "lacked professional maturity" and finding that reason to be non-discriminatory under the ADEA for denial of promotion).

plaintiff must proceed under the familiar McDonnell Douglas burden-shifting framework. See Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015) (citing inter alia McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). "[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied," see Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (citing Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996))), but a plaintiff must be able to point to an adverse employment action of some type.

### 1. Statute of Limitations

Before reaching the merits of any ADEA claim, Defendants argue that, even assuming Long has alleged cognizable adverse employment actions, her claims are nevertheless time-barred. Long does not respond to the argument insofar as it relates to her federal claims.[6] (Doc. 23 at 9.)

In most cases, ADEA claimants must file a charge with the EEOC "within 180 days after the alleged unlawful practice

---

[6] In asserting that her State age discrimination claims are not time-barred, Long argues that she filed the action within three years of the date of DSS's "proposed 'Problem Resolution'" and was nevertheless constructively discharged. (Doc. 23 at 4-5.) As to her State breach of contract claim, Long responds only that any statute of limitations should be equitably tolled under the doctrine of a continuing wrong. (Id. at 9.) As to all claims, apart from the laundry list of illustrative grievances Long seeks to incorporate into her complaint by reference, she fails to identify any as an alleged adverse employment action in her briefing.

occurred." 29 U.S.C. § 626(d)(1)(A). That period is extended to 300 days if the State in which the allegedly unlawful practice took place is a "deferral State," that is, if the State has an anti-age discrimination law and authorizes a State authority to pursue age discrimination claims. Id. § 633(b); see also id. § 626(d)(1)(B). Here, the alleged misconduct took place in North Carolina, which is a non-deferral State "in the overwhelming number of cases." Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008). There are two exceptions,[7] neither of which applies here. Furthermore, Long has made no allegation that North Carolina is a deferral State for her purposes. As such, the 180-day period applies to her claims. Cf. Huggins v. N.C. Dep't of Admin., No. 5:10-CV-414-FL, 2013 WL 5201033, at *18 n.5 (E.D.N.C. Sept. 13, 2013) ("[W]here Plaintiff has not raised the issue, the 180-day statutory period will be utilized for purposes of determining whether Plaintiff's claim is time-barred."), aff'd sub nom. Huggins v. NC Dep't of Admin., 554 F. App'x 219 (4th Cir. 2014).[8]

---

[7] One exception is where the North Carolina State Office of Administrative Hearings has subject matter jurisdiction over a charge filed by an employee of the State. The other applies to disputes in New Hanover County where the county Human Relations Commission has subject matter jurisdiction. Id.

[8] Long's claims may also be barred by 29 U.S.C. § 626(e), which requires a claimant to bring a civil action within 90 days after the date on which she receives notice of the EEOC's decision. With leave of court, Long filed her complaint on July 21, 2015, 112 days after the EEOC issued

The Fourth Circuit has rejected the "discovery" rule and held instead that the ADEA's statute of limitations accrues when the allegedly unlawful act occurred. Hamilton v. 1st Source Bank, 928 F.2d 86, 88-89 (4th Cir. 1990). "To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period." Id.

Here, Long filed her charge with the EEOC on November 20, 2013 (Doc. 22-3 at 40),[9] so she cannot challenge any allegedly unlawful acts that occurred before May 14, 2013 - 180 days before her charge. This bars all of Long's claims in her grievance of October 11, 2012.[10] DSS answered the grievance on January 9, 2013,

_____

its right-to-sue letter. (Doc. 4 at 1, 8; Doc. 22-3 at 43.) Neither party has raised this issue, however, so it will not be addressed. See Shelton v. Atl. Bingo Supply Co., No. DKC 11-0952, 2011 WL 4985277, at *1 (D. Md. Oct. 17, 2011) ("The ninety-day period is not jurisdictional . . . ." (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982); Fisher v. Md. Dep't of Hous. & Cmty. Dev., 32 F. Supp. 2d 257, 264 (D. Md. 1998), aff'd, 166 F.3d 1208 (4th Cir. 1998))).

[9] The charge was perfected on December 16, 2013. (Id. at 42.)

[10] This also disposes of any grievances that may mirror a hostile work environment or retaliation claim, though no such claims were expressly asserted and would nevertheless fail on the merits. (See Doc. 22-3 at 6-7, 42.) See Burns v. AAF-McQuay, Inc., 166 F.3d 292, 294 (4th Cir. 1999) (stating that hostile work environment claim requires proof that (1) one is at least 40 years old, (2) was harassed because of her age, (3) the harassment had the effect of unreasonably interfering with her work, creating an environment that was both objectively and subjectively hostile or offensive, and (4) some basis for imputing liability to the employer); Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006) (stating that to establish a prima facie case of retaliation, one must demonstrate that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between

giving Long notice that it would not grant her the relief she requested. As such, any disparate treatment claim based on an activity of which Long complained in this grievance is necessarily time-barred, both as a matter of law and because she waived any argument as to it.

Excepted from this exclusion, however, is her claim that DSS diminished her pay as a result of her age. (See Doc. 4 at 2-5.) As DSS admits (Doc. 22 at 11, n.10), the Lilly Ledbetter Fair Pay Act of 2009 provides that an unlawful practice with respect to discriminatory compensation occurs "each time wages, benefits, or other compensation is paid" resulting from an unlawful practice or decision. 29 U.S.C. § 626(d)(3).

## 2. Pay Discrimination

Defendants argue that Long fails to demonstrate a genuine dispute of material fact whether DSS diminished her pay on the basis of her age.

To succeed on her claim of pay discrimination, Long "must

---

the protected activity and the adverse action). Long makes no allegation regarding the causal link between the protected activity and the alleged adverse action, except that her supervisors treated her differently from other people in her position and that she holds a subjective belief that she was being retaliated against. (Doc. 22-3 at 41-42.) As to hostile work environment, Long fails to produce or forecast any evidence that would satisfy the elements - most notably the third element - for such a claim to survive summary judgment. As to any retaliation claim that could be argued to be contained within the grievances, as in other contexts, Long's subjective beliefs are not enough to create a genuine dispute of fact. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 134-35 (4th Cir. 2002).

prove that discrimination was 'the but-for cause' of the adverse employment action." Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 234 (4th Cir. 2016) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). She "must demonstrate that the employer engaged in disparate treatment 'because of' [her] age and, accordingly, age must be the 'but-for' cause of such treatment." E.E.O.C. v. Baltimore Cty., 747 F.3d 267, 273 (4th Cir.); see also E.E.O.C. v. Washington Suburban Sanitary Comm'n, 631 F.3d 174, 182 (4th Cir. 2011) ("Age discrimination plaintiffs must prove that 'age was the "but-for" cause of the employer's adverse action.'" (quoting Gross, 557 U.S. at 177)). This does not mean that the discrimination must be the sole cause of the adverse action. See Leal v. McHugh, 731 F.3d 405, 415 (5th Cir. 2013); see also Arthur v. Pet Dairy, 593 F. App'x 211, 220 (4th Cir. 2015)[11] ("[A]ccording to Gross, to prevail on summary judgment the employee must only demonstrate, age-related considerations aside, that under the circumstances these other nondisciminatory grounds did not animate the employer to take the adverse employment action.").

Here, Long offers no direct evidence that she was paid less

---

[11] Unpublished opinions of the Fourth Circuit are not precedential. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

because of her age, and she fails to refute ample evidence on the record that her underemployment at Vanguard, coupled with her other experience and education, animated DSS's decision to pay her less. Long herself implied in a deposition that DSS paid her less because she was underemployed.  (See, e.g., Doc. 22-1 at 269-70 ("Q: So it was just because you were over 40 and you felt they had not treated you fairly because of your unemployment situation or your part-time employment? A: And then two other professionals said that that was very typical."); Doc. 23-1 at 31 ("Q: Okay.  But was that the gist of it, that were [sic] unemployed or underemployed, and so you should be grateful for whatever you were going to get.  A: Yes, that's what she said.").)  DSS also presents undisputed evidence that Long's rate of pay was within its normal range (see, e.g., Doc. 22-4 at 10) and that it was DSS's practice to pay similar rates to similarly qualified candidates (id. at 4-5, ¶¶ 9-10).

Long also does not attempt to refute DSS's evidence of comparators' salaries.  (Id. at 7-8, ¶ 15.)  The record contains undisputed evidence that other, similarly situated employees at DSS were treated consistently with the policies DSS claims account for Long's salary.  Forsyth County Senior Human Resources Consultant Joyner provided a declaration containing information on four comparators to Long.  The first comparator is eight years younger than Long.  She assumed the same position Long occupied

roughly one month before Long did and was paid the same rate that Long was paid. The second is older than Long, held two degrees in social work, and had four years' experience as a senior social worker. She was hired at a rate of $48,089.60 per year, roughly 4.4% more than Long. The third comparator is three years older than Long, held a master's degree in social work, and worked as a social work for ten years before joining DSS. He was paid $53,019.20 when he was hired in 2012. The final comparator is seven years younger than Long, and when she was promoted to Long's position in 2009 after completing five years of experience with DSS, her salary was $49,462.40. (Id. at 7-8, ¶ 15.) By contrast, Long had worked as a social worker for Guilford County Department of Social Services for 4 years and as a part-time social worker for Vanguard for approximately 1.5 years (id. at 13-15), and she had obtained a Masters in Public Administration (id. at 2, ¶ 3; id. at 12). She had no formal education in social work. (Id. at 12.)

Long acknowledged in her September 2011 letter requesting "reconsideration of a higher salary" that the job posting specified that those without a graduate degree in social work (but with a college degree) should have a minimum of "five years of experience in rehabilitation counseling, pastoral counseling, group work, or

community organization." (Doc. 22-1 at 105.)[12] Long argued that her social worker experience and her other prior work qualified her for a higher salary. (Id.) Given DSS's comparators' salaries and Long's social work experience, that DSS valued Long's other work experience differently than she did is not evidence that she was discriminated against as to her salary based on age. Courts should be careful not to engage in a reweighing of an employer's legitimate employment considerations. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) ("[T]his Court is not in a position to second guess . . . decisions that are based on legitimate, non-discriminatory rationales . . . ." (citing Holmes v. Bevilacqua, 794 F.2d 142, 146–47 (4th Cir. 1986) (en banc))); Henson v. Liggett Grp., Inc., 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions . . . as long as the employer does not violate the ADEA." (citing E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 513 (4th Cir. 1994))).

Based on this record, no reasonable juror could conclude that age was the but-for cause of Long's allegedly diminished pay.

---

[12] These were minimum expectations for the job and were listed secondary to the expectation that one have either a master's or bachelor's degree from an accredited school of social work, or at least 15 semester hours in courses related to social work. (Doc. 22-4 at 10.) Long has not indicated that she had any of these qualifications.

### 3. Constructive Discharge

In connection with her discussion of her State age discrimination claims in her response to DSS's motion for summary judgment, Long argues cursorily that she was constructively discharged.  (Doc. 23 at 3-4.)  Long does not tie the argument to any federal claim.  No constructive discharge claim is alleged in the complaint, nor has Long moved to amend the pleading.  It is well-established that a party may not use a brief in support of or in opposition to summary judgment to amend a complaint.  Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) (citing Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009)).

Even if the court were to recognize the claim at this stage, however, it would fail on the merits.  In the absence of direct evidence of age discrimination, Long must proceed under the McDonnell Douglas framework.  To state a prima facie case for constructive discharge based on age, Long must demonstrate that (1) she was constructively discharged; (2) she was at least 40 years old at that time; (3) she was performing her duties at a level that met DSS's legitimate expectations at the time of her constructive discharge; and (4) she was treated more harshly than similarly situated, younger employees.  Belcher v. W.C. English Inc., 125 F. Supp. 3d 544, 551 (M.D.N.C. 2015) (citing Alba v.

Merrill Lynch & Co., 198 F. App'x 288, 294 (4th Cir. 2006)).

"Constructive discharge occurs when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" Id. at 552 (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)). To prove deliberateness, a plaintiff must demonstrate that DSS "specifically intended its actions 'as an effort to force the employee to quit.'" Id. (citing Bristow, 770 F.2d at 1255). Deliberateness can be demonstrated by presenting direct evidence of an intent "to drive [a plaintiff] from the job" or circumstantial evidence, "including a series of actions that single out a plaintiff for differential treatment." Id. at 552 (quoting Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir. 1993)). With regard to intolerability, a plaintiff must show that a reasonable person in her position "'would have felt compelled to resign,' meaning '[s]he would have had no choice but to resign.'" Id. (quoting Bristow, 770 F.2d at 1255; Blistein v. St. John's Coll., 74 F.3d 1459, 1468 (4th Cir. 1996)). "It is insufficient to show 'merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign.'" Id. (quoting Blistein, 74 F.3d at 1468) (emphasis added).

Here, Long fails to provide evidence of deliberateness or

intolerability.  She offers no evidence of the intent of any of DSS's actions and fails even to allege or argue that DSS wanted her to leave her job.  Her only contention regarding the intolerability of her circumstances was that she "sought other employment" "in frustration" after DSS did not respond favorably to her grievances.  (Doc. 23 at 4-5 (citing Doc. 23-1 at 46).)  Moreover, the grievances (see supra note 2) fall far short of conduct that a jury could conclude would reasonably compel an employee to resign as the only choice available.

As such, no reasonable juror could find that Long satisfies either part of the first element of a constructive discharge claim, if it could be construed under the complaint.

### C.  State Law Claims

Having found that the only claim over which this court has original jurisdiction will be dismissed, the court declines to exercise supplemental jurisdiction over Long's State law claims.  See 28 U.S.C. § 1367(c) ("The district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) [it] has dismissed all claims over which it has original jurisdiction . . . .").  The Fourth Circuit has noted in a similar circumstance that "[w]ith all its federal questions gone, there may be the authority to keep [the case] in federal court[,] . . . but there is no good reason to do so."  Waybright v. Frederick Cty., Md., 528 F.3d 199, 209 (4th Cir. 2008); see also Hinson v.

19

Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (recognizing that "the remand power [is] inherent in the statutory authorization to decline supplemental jurisdiction under § 1367(c)"). The court finds that judicial economy, convenience, fairness, and comity weigh in favor of remanding the remaining claims – all founded solely on State law grounds - to State court for further consideration. See In re Conklin, 946 F.2d 306, 324 (4th Cir. 1991).

## III. CONCLUSION

For the reasons stated, the court finds that Long's pay discrimination claim and putative constructive discharge claim do not present a genuine dispute of material fact and fail as a matter of law. The court finds further that Long's other ADEA claims are barred by the ADEA's statute of limitations, 29 U.S.C. § 626(d)(1).

IT IS THEREFORE ORDERED that the Defendants' motion for summary judgment (Doc. 21) is GRANTED as to Long's ADEA claims, which are DISMISSED WITH PREJUDICE, and DENIED WITHOUT PREJUDICE as to the remaining State law claims.

Having dismissed all claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over Long's State law claims pursuant to 28 U.S.C. § 1367(c)(3), and they are REMANDED to the General Court of Justice, Superior Court Division, Forsyth County, North Carolina, for further consideration.

/s/  Thomas D. Schroeder
_____
United States District Judge

December 30, 2016